UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------

In the Matter of:               Chapter 11

MORGANSEN'S LTD.                 03-80994

        Debtor
----------------------------

Motion to Expedite for a Proposed Public Auction Sale

                    United States Bankruptcy Court
                    Central Islip, New York

                    October 14, 2003
                    10:30 a.m.

B E F O R E:

            HONORABLE STAN BERNSTEIN,
            Bankruptcy Judge

A P P E A R A N C E S:

MELTZER, LIPPE & GOLDSTEIN, LLP
        Attorneys for Trustee
190 Willis Avenue
Mineola, NY 11501
            BY: NEIL H. ACKERMAN, ESQ.


ALSO PRESENT:

Maur Dubin

Marvin Goldberg

Eileen Cronin, Court Reporter

1        P R O C E E D I N G S

2              THE COURT:     Mr. Ackerman.

3              MR. ACKERMAN:     Neal Ackerman, Trustee and

4      appearing by counsel for the Trustee, Meltzer Lippe &

5      Goldstein LLP.

6              THE COURT:     The court reviewed all of the

7      papers that have been submitted.  First they were given an

8      opportunity to supplement their statements.  I have read all

9      of the cases, and I have concluded that the Trustee has the

10     right to go ahead and conduct an auction sale and sell items

11     that persons are claiming are consigned goods.

12             MALE VOICE:     I can't you your Honor.

13             THE COURT:     I have already decided the matter.

14     I have issued an opinion that is available here.  Your only

15     alternative at this point is to file an appeal with the

16     District Court.  You have ten days to do that from the date

17     of the entry of the order consented today, and you will

18     probably have to post a bond because the Trustee is going to

19     oppose any appeals.  I share your frustrations, but the law

20     is clear.

21             In light of this matter, Mr. Ackerman, since you

22     now have the authority to go forward, when are you going to

23     conduct this sale.  I know you are concerned about the

24     $10,000 in operating costs or costs incurred both to

25     maintain the premises, the insurance, the utilities, burglar

1       alarms and alike.

2               MR. ACKERMAN:   As quickly as possible, Judge.

3       Should I submit a proposed order.  I see this is so ordered.

4

5               THE COURT:    No, you don't need to submit one

6       here, but you need to -- but if you are going to schedule a

7       sale, I think what you ought to do is go ahead and make

8       arrangements with Mr. Maltz to do it as expeditiously as

9       possible, but make sure that you have him circulate it to

10      his database and I guess you will make some determination

11      what's the best advertising vehicle to publicize the sale,

12      and I assume you can also have him put notices up at the

13      building.

14              What about the issue of alternative sites for

15      warehoused goods?  There was an issue raised whether or not

16      Ms. Brunesco had some kind of facility in New York.  I know

17      she had an office in New York.  I know she dealt during the

18      non-summer months in the City of New York with art dealers

19      and other dealers and interior decorators.

20              Have you been able to resolve the question of

21      whether there is some alternate site where either the

22      inventory of the debtor or some consigned goods are located?

23              MR. ACKERMAN:   We are investigating it.  We

24      have not resolved it.  We did hold a 341 last Thursday, I

25      believe at 2:30.  One of the purported consignors came in.

1       I asked Ms. Brunesco questions with respect to these other

2       warehouses, about conducting auctions in the Bronx, et

3       cetera, her testimony was that there was one other

4       warehouse, but that it had been closed down approximately

5       nine months after the company had been opened in 2000.  She

6       stated that she conducted only one auction in the Bronx for

7       another company.  I am continuing to investigate.

8             There was other testimony about other questions

9       of this ilk.  I asked about names of people I have been

10      given.  What there connection was to the company.  People

11      who were clearly authorized to use American Express cards of

12      the company.  What their names were.  I have asked for

13      additional documents, et cetera.

14            THE COURT:    Okay, but that has to do with the

15      administration of the estate.  But as to your conducting the

16      auction, it is now October 14th.  You seem to be enjoying at

17      least through yesterday a very pleasant Fall.  The weather

18      is turning adverse for the next few days.  How long do you

19      think it is going to set up the first day of sale?

20            MR. ACKERMAN:    Am I authorized to conduct

21      publication notice with cause up to $7,500 to be published

22      in I believe The New York Times, the Hamptons Journal,

23      public dance papers, Newsday.

24            THE COURT:    Fine as long as you get the bases

25      covered.  I don't know how much notice there is.  I don't

1    know how expensive an ad in <u>The New York Times</u> is, although

2    Mr. Maltz did seem to indicate that persons who come from

3    the tri-state area, from Westchester to Duchess County and

4    parts of New Jersey and other parts of New York City and

5    Long Island.

6         MR. ACKERMAN:    My preference, Judge, would be

7    to hold -- I believe that today being Tuesday, we should be

8    able to get publication notice in this weekend, and we might

9    be able to hold the first auction sale next week.  I would

10   like to add for the record that I am going to be asking

11   someone to assist Mr. Maltz in the sale.  I have made

12   contact with Robert Tepper and additionally Doyle & Company.

13         THE COURT:    Robert Tepper?

14         MR. ACKERMAN:    Yes.  One second, Judge.  I have

15   the names over here.  I apologize.  There is Tepper

16   Galleries at 110 East 125th Street.  One of the consignors

17   gave his name to me and also the US Trustee highly

18   recommended them and there is also a Doyle Galleries.  I am

19   going to pick between the two, but I will ask one of them to

20   assist Mr. Maltz.

21         MR. DUBIN:    May I say something.

22         THE COURT:    Let Mr. Ackerman finish.  Is there

23   anything further Mr. Ackerman?

24         Mr. Ackerman, anything further?  I am concerned

25   that you going to be bumping into Thanksgiving.

1          MR. ACKERMAN:    I'm going to try to do the

2     auction sales as quickly as possible now.

3          THE COURT:    You simply have to trade off a

4     quick date with adequate notice and advertise.  I will leave

5     that to your determination.

6          MR. ACKERMAN:    Judge, pursuant to local rule,

7     there is a provision in the Federal Bankruptcy Rules under

8     6004 that states that you may authorize the sale to be

9     conducted within -- and not waiting ten days.  Do you so

10    authorize?

11         THE COURT:    No, I'm not going to authorize in

12    short of ten days.

13         MR. ACKERMAN:    Okay.

14         THE COURT:    I mean you are going to have to

15    get the ad out and there may be some inquiries that come in.

16    It seems to me that creditors or other consignors and others

17    might want to participate.

18         MR. ACKERMAN:    Yes.

19         THE COURT:    It should be given adequate

20    notice.  They already have had one notice, but we didn't set

21    a date.  So I would prefer that you give at least two weeks

22    notice or two weeks from the date you begin advertising to

23    the date of the sale.

24         I assume at the same time you are going to have

25    to have a back-up date, and I suspect that Mr. Maltz in

1    consultation with one of these companies can assist in

2    determining what should be sold first.

3           I know at one point Mr. Maltz said there is so

4    much stuff that's backed up that you have to clear the floor

5    in order to get to the other stuff.  But I don't know what's

6    going to bring the most traffic.

7           MR. ACKERMAN:    I will send a direct notice in

8    addition to the publication notice and the direct notices

9    that Mr. Maltz is sending to the people who claim to be

10   consignors.

11          Judge, one thing I would like to ask further.  I

12   apologize for compounding.  In the agreement, the

13   consignment agreement, it does say that the bidders -- that

14   the consignors may not bid.  May I have authorization for

15   them to bid?

16          THE COURT:     Yes.

17          MR. ACKERMAN:    Thank you.

18          THE COURT:     But you are going to set some

19   reserves?

20          MR. ACKERMAN:    Yes.

21          THE COURT:     All right.  So what happens if an

22   item doesn't bring the reserve price?

23          MR. ACKERMAN:    Then, Judge, I will take it out

24   of the setting, and I might leave it with some art gallery

25   or something like that pursuant to further order of the

1      Court.

2              THE COURT:    Okay.  All right.  Go ahead.  Do

3      you want to step forward please.  Step forward, identify

4      yourself on the record please.

5              MR. DUBIN:    My name is Maur.  —A-U-R.   Dubin.

6      D-U-B-I-N.  And I have been in this business for many years.

7      I am a bit confused about a number of things.

8              I dealt with a man called Ben Morgansen, and that

9      is who I gave my things on consignment to.  Who this woman

10     is who suddenly owns or is head of the company, I have no

11     idea.  I have never seen her.  I have never talked to her.

12     I know nothing about her.

13             I know that I have merchandise that belongs to me

14     that was given on consignment to Ben Morgansen.  I have

15     heard you mention that you might consider --

16             THE COURT:    If you have some agreements,

17     written agreements, you can show them to the Trustee.  The

18     Trustee can make some kind of determination.

19             MR. DUBIN:    Well, I don't know how he can

20     transfer my material without my permission.

21             THE COURT:    Mr. Dubin, I can't determine this

22     at this point in time.  Whatever documentation you have, I

23     don't know how far back these transactions go.  I hear you,

24     but there is nothing I can do about this at this point.  It

25     is your burden to show that these matters weren't delivered

1          to this particular debtor.

2                    MR. DUBIN:    We did that.  We went out.  We

3          marked every item.  We had the list of when we gave them.

4                    THE COURT:    But this is not addressed to me.

5          It is addressed to the Trustee.  If you can demonstrate to

6          him that these goods were not delivered to this particular

7          debtor and that it was was delivered to some other company

8          or some predecessor --

9                    MR. DUBIN:    They came and picked them up in

10         their trucks from my premises.

11                   THE COURT:    What records do you have?

12                   MR. DUBIN:    I have lists which I took out to the

13         Southampton, went through the previous auctioneer, showed

14         each item --

15                   THE COURT:    It's not a question of your

16         identifying them.  The question is what proof, what written

17         records do you have to demonstrate that you caused these to

18         be delivered to another entity.

19                   MR. DUBIN:    I have in my records a signed

20         receipt from his deliverymen who came and picked up the

21         items.

22                   THE COURT:    Show all of this to the Trustee.

23         The Trustee will review it.

24                   MR. DUBIN:    In addition, I have done business

25         for many years at Tepper and Doyle Galleries.  Doyle will

1    not take this merchandise.  It is not their quality.  So if
2    you even going to think about offering it to them, it's a
3    waste of time.  You might get into Tepper.  You certainly
4    won't get into Doyle.
5              THE COURT:    I don't think it was a question of
6    making a determination where unsold items would go.  The
7    question was getting -- since some of you have said you
8    ought to avail yourself of some experts in the industry.
9    The Trustee is trying to take up your suggestion and make
10   sure these get input from a recognized antique house.  They
11   are not determining now --
12             MR. DUBIN:    There are no antiques there.  It's
13   second hand furniture.
14             THE COURT:    Anything further, Mr. Dubin?
15             MR. DUBIN:    I suppose not.
16             THE COURT:    Thank you.
17             MR. GOLDBERG:   Your Honor, may I?
18             THE COURT:    Yes.
19             MR. GOLDBERG:    Marvin Goldberg, a creditor.
20   May I ask the debtor a few questions, your Honor?
21             THE COURT:    No.  What's the point of this.  I
22   am not turning this into a discovery hearing.  You want to
23   talk to Mrs. Brunesco, you can talk to Mrs. Brunesco.  You
24   don't need to have her come and testify.
25             MR. GOLDBERG:    Well, my impression from the

1   last hearing that we had here was that she would be produced

2   today.

3           THE COURT:    No.  She was going to be produced

4   at the meeting of the creditors, and you were given an

5   opportunity to ask her questions there because then she was

6   under oath.

7           MR. GOLDBERG:    Well, can't we have her sworn in

8   again for a few questions today, your Honor?

9           THE COURT:    I want to know what the point of

10  this is Mr. Goldberg.

11          MR. GOLDBERG:    Well, it has to do with four

12  items that were missing from the viewing that my wife and I

13  went to at the Southampton facility.

14          THE COURT:    All I'm trying to deal with now is

15  the issues of what's to be sold; not what may have been

16  sold.  You may have claims against the estate by filing

17  proofs of claim on the theory that you had a right to the

18  negotiated amount upon some further sale or disposition, but

19  these claims -- look these are claims you may have against

20  Mr. Brunesco individually.

21          These may be claims you have against the estate.

22  But we will have a period of time for filing proofs of claim

23  so you can assert your position, and if you want to take

24  discovery in connection with those matters, you can do it

25  there.  If you want to talk to Ms. Brunesco now, you can do

1    that, if she is willing to talk to you.  She's in the

2    courtroom, isn't she.

3              MR. GOLDBERG:  I don't see what purpose that

4    would accomplish unless she was under oath.

5              THE COURT:  Mr. Goldberg, I am not turning

6    this into an opportunity for you to start taking an

7    examination to prove your claim.  The only thing before the

8    Court is with respect to the inventory that is there.  How

9    should it be disposed of, and I already ruled on that.

10             MR. GOLDBERG:  Well, we don't know if it's there

11    or not there.  We visited the facility.  Four items were

12    missing.  We would like to know whether they were sold,

13    when, and if so, what happened to the proceeds because we

14    never saw one penny.

15             THE COURT:  I understand, but this is not the

16    occasion for doing that.

17             If you want to talk to Ms. Brunesco with the

18    Trustee, the Trustee has an obligation to cooperate with

19    creditors, but it is not something that is now the occasion

20    for doing discovery in connection with any claims that you

21    may have against her.  And you are not precluded from doing

22    that.  But this is not the occasion.

23             MR. ACKERMAN:  Judge, the adjourned 341 in this

24    is October 22 at 2:00.

25             THE COURT:  October 22 at 2:00.  And where is

1   that going to be held?

2           MR. ACKERMAN:    That will be held on the fifth

3   floor of this very same building.

4           THE COURT:      In this building?

5           MR. ACKERMAN:    Yes.

6           THE COURT:      Fifth floor on 10/22/03 at 2:00

7   p.m.

8           MR. ACKERMAN:    Judge, I apologize.   October 20.

9   I apologize.   October 20.   2-0.   Monday.   I apologize

10  Monday.

11          THE COURT:      So it's next Monday?

12          MR. ACKERMAN:    Yes.

13          THE COURT:      Ms. Brunesco is going to be there

14  to testify?

15          MR. ACKERMAN:    Yes.

16          THE COURT:      So what I think Mr. Goldberg you

17  ought to do is give the information to the Trustee so that

18  he can make that investigation for you if you don't want to

19  attend.   I think that's the time to do it because then she

20  will be under oath.   The Trustee controls the meeting.   If

21  there are problems, he can come up here.   I will be in the

22  courthouse.   All right.

23          MR. GOLDBERG:    Thank you, your Honor.

24          THE COURT:      All right, Mr. Goldberg.   Anything

25  further, Mr. Ackerman?

1          MR. ACKERMAN:      Nothing further, Judge.

2          THE COURT:      You better get cracking.

3          MR. ACKERMAN:      Thank you.

4          (Whereupon, the hearing was adjourned.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                        C E R T I F I C A T E

3

4                I, KAREN KNIPPER, HEREBY CERTIFY THAT:

5    (A) THE FOREGOING PAGES REPRESENT AN ACCURATE AND COMPLETE

6    TRANSCRIPTION OF THE RECORD OF THE PROCEEDING BEFORE THE

7    UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF

8    NEW YORK, HON. STAN BERNSTEIN PRESIDING, IN THE MATTER OF

9    MORGANSEN'S LTD., AND (B) THESE PAGES CONSTITUTE A TRUE COPY

10   OF THE TRANSCRIPT OF THE PROCEEDING.

11

12            _____

13            Karen Knipper, Transcriber